*MHN*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

RECEIVED

APR 29 2008

APR 29 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

DARYL A. RICHIE,

    Plaintiff, Pro Se,

v.

Case No.: 07 C 7071

DIRECTOR of BUREAU of PRISONS, et al.,
In Their Individual and Official
Capacities.

    Defendants.

JURY DEMAND

=== SECOND ===

PLAINTIFF'S AMENDED COMPLAINT FOR THE
DEPRIVATION OF CONSTITUTIONAL RIGHTS
PURSUANT TO TITLE 28 U.S.C. § 1331

    COMES NOW the Plaintiff in the above-captioned cause of action, Mr. Daryl A. Richie ( hereinafter referred to as " Mr. Richie " or " Plaintiff, " as the context may, from time to time, require ), proceding pro se and pursuant to the 01 April 2008 order of this Court and AMEND his previously submitted complaint so as to " ... give each of the named defendants some basic notice of what he or she has done to violate the plaintiff's constitutional rights. " Please see STATEMENT, pg. 2.

I. STATEMENT OF FACTS

    On or about _____ 2007, Mr. Richie was arrested and taken to the Metropolitan Correctional Complex ( " MCC " ) at Chicago, Illinois. On or about 27 July 2007, Mr. Richie was sleeping in his bed at MCC Chicago when he awakened to his flesh being boiled off

his head, neck face, and back. This egregious act was committed by a prisoner at the MCC who had been allowed into the general population in spite of a history of violent mental illness and anti-social behavior.

Lt. Fryer, c/o Rogers and four (4) unknown corrections officers escorted Mr. Richie to Health Services suffering from second degree burns. Nurse Griep, being trained in the science of medicine, gave Mr. Richie an ice pack and told him he'd live.

Mr. Richie was the taken by Fryer, Rogers and the four unknown officers, still burning, to the Special Housing Unit ( SHU ) at MCC Chicago and made to wait for over three ( 3 ) hours in agony before being transported to the hospital for treatment.

There are many hospitals in the Metropolitan Chicago area that treat burn victims. There are an abundance of Emercency Medical Services providers in the Metropolitan Chicago area trained to provide first response medical assistance to persons suffering serious burns.

The procedures in use at the MCC Chicago proved, on 27 July 2007, to be grossly inadequate to protect Mr. Richie from violent attack from a mentally ill prisoner. MCC Chicago has facilities and personnel trained to treat and segregate the mentally ill from the general population. The prisoner who attacked Mr. Richie was not segregated.

Defendants Fryer, Rogers and the four unknown Officers failed to protect Mr. Richie from violent attack. Mr. Richie was violently attacked. After this attack, Fryer, Rogers and the four unknown officers seeing Mr. Richies injuries, exhibited a deliberate

indifference to his serious medical needs by placing Mr. Richie in the SHU with only an ice pack when it was clear ( and would be so even to a layman ) that an ice pack could do nothing for second degree burns.

Defendant Griep, seeing Mr. Richie having second degree burns, exhibited a deliberate indifference to his serious medical needs when Griep, being trained and having experience in medicine, gave Mr. Richie an ice pack for second degree burns.

Pindowski failed in his duty to make the MCC Chicago safe for prisoners and staff by allowing a mentally ill prisoner with a history of violent episodes to be housed in the general poulation where he could prey on others.

Defendant Lappin failed in the responsibility delegated to him by Defendant Mukasey to " ... provide for the protection ... " of Mr. Richie while housed at the MCC Chicago.

Defendant Mukasey failed in his duty to " ... provide for the safekeeping ... " of Mr. Richie while at the MCC Chicago.

The defendants in this action are hereby sued in both their individual and official capacities.

### JURY DEMAND

The Plaintiff, Mr. Daryl A. Richie, a prisoner confined at the United States Penitentiary at terre Haute, Indiana does not consent to a Magistrate conducting a trial on the merits. Instead, Mr. Richie hereby makes a formal DEMAND, as is his right to have all triable issues heard by a duly empaneled Jury.

## II. STANDARD OF REVIEW

The Court is hereby NOTICED, pursuant to Rule 201(d) of the Federal Rules of Evidence ( " FREv " ) that Mr. Richie is, in fact, untrained in law. If required, he is utterly incapable of establishing the legal framework necessary to see this matter on to adjudication upon the merits. As such, he is at great disadvantage to pursue a lawful course of redress for injuries suffered as a result of the actions of a violent mentally disturbed prisoner and the resultant acts/omissions of employees and officials of the Federal Bureau of Prisons ( " F.B.O.P. " or " FBOP " ).

He seeks review of:

1. The practices and procedures for dealing with the mentally disturbed;

2. The practices and procedures of classifying inmates at the MCC and throughout the FBOP;

3. The practices and procedures for providing prisoners at the MCC emergency medical care;

4. The practices and procedures for protection of inmates at the MCC and throughout the FBOP from violent attacks by guards and/or other prisoners;

5. The practices and procedures for placing prisoners in SHU after real or percieved altercations;

6. The practices and procedures for compensating prisoners for serious bodily injury.

Plaintiff asks that this Court review this Complaint with an eye towards the doctrine of " liberal construction " and dismiss this action ONLY if the Court finds that Mr. Richie can prove no set of facts which would entitle him to the relief he now seeks. Please See Haines v. Kerner, 404 US 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 ( 1972 )( per curiam ).

### III. PARTIES

Plaintiff-

Daryl A. Richie is the Plaintiff in this cause of action.

Defendants-

US Attorney General michael Mukasey is a defendant in this cause of action.

Harley G. Lappin is a defendant in this cause of action.

Eric Wilson is a defendant in this cause of action.

Dr. John Doe Pindowski is a defendant in this cause of action.

Lt. John Doe Fryer is a defendant in this cause of action.

c/o John Doe Rogers is a defendant in this cause of action.

Jane Doe Griep is a defendant in this cause of action.

Jane Doe Velasquez is a defendant in this cause of action.

Four unknown corrections officers are defendants in this cause of action.

The defendants named above and those who may come to light during discovery are hereby, in accordance with §1, supra, sued in their individual and official capcities

## IV. ARGUMENT

There exists a duty of professional care in the federal correctional context. As will be shown, infra, this duty imposes the weighty responsibility upon federal correctional officials to bring their skills, training and experience to bear to manage the Nation's prison system.

Notwithstanding the general " hands off " doctrine adopted by courts today, without this skill, training and experience, prison order would quickly decay to something unacceptable to today's society.

Federal law requires Mr. Michael Mukasey, United States Attorney General to:

> (2) provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise;
>
> (3) provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States.
>
> - See Title 18 U.S.C. § 4042(a)(2) and (3)

Assuming as we must that Congress says in a statute what it means and means in a statute what it says there, Connecticut National Bank v. Germain, 503 US 249, 254, 117 L.Ed 2d 391, 112 S.Ct. 1146 ( 1992 ), the Attorney General had a duty to protect Mr. Richie from violent attack from a mentally ill prisoner while con-

fined at the MCC Chicago. This means that the Attorney General must formulate and implement policies that reduce the risk of violent attacks by violent and mentally ill prisoners. But the reasonable duty of care does not stop here. Mr. Mukasey must also make periodic inquiries, either in person or by designee, into the success and/or failure of particular policies so that adjustments may be made to make the facilities to which Mr. Mukasey owes such duty of care safer for prisoners and staff.

It is the failure of Mr. Mukasey to make such periodic reviews, and to use such data gained therefrom to make the MCC at Chicago, Illinois a safer place for Mr. Richie. This resulted in Mr. Richie being violently attacked by a man who was mentally ill and who had a history of violent behavior that a reasonably prudent person in the correctional field would have cause to believe would be violent again.

Mr. Richie suffers from permanent hearing loss, scars on his head and neck that will never go away and the memory of being boiled alive by a prisoner who should have been in a place where MCC officials could attend to his psychiatric/psychological needs.

It is reasonable to foresee that a failure to provide for the protection, instruction and discipline of prisoners at the MCC, Chicago, would lead to violent attacks by prisoners and result in serious bodily injury and in some circumstances even death. Mr. Mukasey, being a reasonably prudent Governmental official, trained in law, knew or should have known that prisoners at the MCC Chicago, particularly Mr. Richie, would be at risk of serious bodily injury or death if Mr. Mukasey failed to bring his skill, training and expertise to bear to act in the manner prescribed by

the Legislative Branch of Government at § 4042.

Concurrent with the responsibility of the Attorney General is the duty of care imposed upon Mr. Harley G. Lappin, Director of the Federal Bureau of Prisons.

His duty is to provide a level of care wherein obvious areas of improvement are considered for new procedures and policies that reduce the risk of violence in facilities under Mr. Lappin's control.

The MCC Chicago is a facility under Mr. Lappin's control.

It is obvious that prisoners with a history of mental illness that includes episodes of violent behavior would act out their aggressions in a vilent manner if left to roam about freely in the general prison population.

It is general practice to segregate such violent prisoners and to provide treatment and, in some instances, even rewards for abstinence from violence. Such practices have proven somewhat successful in the correctional context.

Defendant Pindowski is responsible as well as Mr. Mukasey and Mr. Lappin for the classification of the mentally ill and their placement once arrested at the MCC Chicago. This responsibility imposes a duty on Mr. Pindowski to evaluate and treat the mentally ill and to segregate them so as to properly treat the prisoner and prevent ( or reduce the risk of ) violent attacks.

Mr. Wilson, as Warden, has a responsibility to ensure that if Mr. Pindowski is not doing the job he was hired to do, in an appropriate manner, to replace him with someone that would.

These are preventative measures designed to reduce risks.

Defendants c/o _____ Rogers, Lt. _____ Fryer, P.A. _____ Velasquez and Nurse _____ Griep responded to the medical emergency by placing Plaintiff in the Special Housing Unit ( hereinafter " SHU " or " the Hole " as the context may require ) for several hours with no treatment for his second degree burns or hearing loss. These defendants' actions were violative of the Eighth Amendment's prohibition against Cruel and Unusual Punishments in that they exhibited a deliberate indifference to Mr. richies burns and hearing loss. Instead of getting him to a burn center or trauma unit ( there are many in the Metropolitan Chicago area ) so that trained personnel could evaluate and treat Mr. Richie's injuries, the Plaintiff was placed in the SHU, with his flesh literally blistering and peeling off of him.

The Seventh Circuit Court of Appeals defines a serious medical need as " ... one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required. " Please See Gutierrez v. Peters, 111 F.3d 1364, 1373 ( 7th Cir 1997 ). A prisoner having the flesh of his face, head and neck boiled off needs immediate medical care.

The deliberate indifference standard embodies both an objective and a subjective prong. First, the alleged deprivation must be, in objective term, " sufficiently serious. " See Wilson v. Seiter, 501 US 294 ( 1991 ). Second, the charged official must act with a sufficiently culpable state of mind. Deliberate indifferen-

ce requires more than negligence, but less than conduct undertaken for the very purpose of causing harm. Please See Farmer v. Brennan, 511 US 825 ( 1994 ).

In determining a claim for the lack of medical treatment, the standard is whether needed or essential, as opposed to desirable, medical treatment is being denied.

The defendants have not denied that Mr. Richie, in fact, needed immediate medical treatment for his second degree burns and hearing loss sustained as the result of violent attack by a violent mentally disturbed prisoner.

Further, Dr. Pindowski cannot escape liability for failing to adequately screen the prisoner before placing him in contact with Mr. Richie. As head of the Psych Services Department at MCC Chicago, Dr Pindowski has the authority to order that violent prisoners be segregated from the rest of the population. Dr. Pindowski, having years of training and experience with prisoners who have been determined to be mentally ill and those who are violent, had a duty owed to Mr. Richie to use such skill, experience and training to reduce the risk of serious bodily injury or death from violent and mentally ill prisoners in the MCC Chicago's general prison population, including your Plaintiff - Mr. Richie.

Defendant Pindowski's failure to act in a manner consistent with his affirmative duty is the proximate cause of Mr. Richie's injuries.

## REQUEST FOR RELIEF

The Plaintiff hereby requests that this Court award him compensatory damages in the amount of 1.5 million dollars as against each defendant ( in their individual and official capacities ) both jointly and severally.

Plaintiff further asks that he be awarded punitive damages as against each defendant, jointly and severally, in the amount of 1.5 million dollars.

Finally, Plaintiff asks that all mentally ill prisoners at MCC Chicago recieve proper mental health care, including ( but in no means limited to ) mental health screenings in a reasonable time and meaningful manner, evaluation for the need for a regimen of psychotropic medications, counseling ( group or individual ) or others forms of mental health care that takes serious account of the special needs of the mentally ill in the penalogical context and classification of the mentally ill for determination of potential for violent behavior or lack thereof and segregation if and when necessary.

## CONCLUSION

The Plaintiff in this cause of action, Mr. Daryl A. Richie, was partially boiled alive in his sleep by a violent mentally ill prisoner with a history of violent behavior who had not been pro-

perly segregated according to his specific mental health needs after correctional staff knew, or should have known, that this prisoner posed a risk to the health, safety and institutional order of the MCC Chicago. Had the other prisoner been properly segregated, he would have had no contact with the general population and therefore would have been unable to pour boiling hot water on Mr. richie in general population resulting in Mr. Richie's hearing loss and second degree burns.

The responsibility for Mr. Richie's injuries goes from the unit corrections officer all the way to the highest levels of the United States Government. For, if no one is accountable for the safety and institutional order of America's penal institutions prisoners would not be properly instructed, correctly disciplined or given any hope of rehabilitation.

There is no question that America's penal institutions are already unacceptably violent places of death and degredation. And this without the prospect of the mentally ill running around loose in the general prison population throwing boiling water on others.

Indeed, this picture represents a grim but unfortunately true reality of life incarcerated for the 2 million or so Americans currently under some form of Criminal Justice control.

WHEREFORE; Mr. Richie humbly requests that this Honorable Court proceed to adjudication on the merits of the Plaintiff's claims and grant Plaintiff the relief he is seeking and any and all aother relief the Court deems fitting and proper to satisfy

the ends of Justice.

Thanking this Court for its valuable time and attention in this matter.

Respectfully,

4-23-08
( date )

*Daryl A. Richie*
Mr. Daryl A. Richie, Pro Se
Fed. Reg. # 08780-424
US Penitentiary
P.O. Box 33
Terre Haute, Indiana
47808

## CERTIFICATE OF SERVICE

I, Daryl A. Richie, being of sound mind, do hereby CERTIFY that a true and correct copy of the foregoing Plaintiff's Amended Complaint For The Deprivation Of Constitutional Rights Pursuant To Title 28 U.S.C. § 1331 has been, in accordance with the Court's 01 April 2008 ORDER, distributed in the below-referenced manner:

| QTY | SENT TO | SIGNED | DATE |
|---|---|---|---|
| 12 | Clerk of Court<br>US District Court<br>Northern District of Illinois<br>219 S. Dearborn Street<br>Chicago, Illinois 60604 | Y | 22 April 08 |
| 1 | Michael Mukasey<br>Office of the US Att. General<br>950 Pennsylvania Avenue<br>Room 4400<br>Washington, D.C. 20530 | Y | 22 April 08 |
| 1 | Ass. US Attorney<br>Office of the US Attorney<br>Northern District of Illinois<br>308 W. State Street<br>Room 300<br>Rockford, Illinois 61101 | Y | 22 April 08 |
| Orig. | Clerk of Court<br>Same as above | Y | 22 April 08 |

4-23-08
( date )

Attest True,

*Daryl A. Richie*
Mr. Daryl A. Richie, Pro se